2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

SHARVON EDWARD FREDRICK,           )   Case No. CV 12-04487-VBK
                                   )
               Petitioner,         )   MEMORANDUM AND ORDER
                                   )
       v.                          )
                                   )
TIM V. VIGRA,                      )
                                   )
               Respondent.         )
_____)

## INTRODUCTION

Sharvon Edward Fredrick (hereinafter referred to as "Petitioner"), a California state prisoner proceeding pro se, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" ("Petition"), pursuant to 28 U.S.C. § 2254 on May 23, 2012 in the United States District Court for the Central District of California.[1]

---

[1] The Court takes notice that Petitioner signed his Federal Petition on April 27, 2012, which is the earliest he could have turned it over to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379 (1988) (pro se prisoners constructively file pleading when they deliver it to prison authorities for mailing); Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) ("When a prisoner gives prison authorities a habeas petition or other pleading to mail to court, the court deems the petition constructively 'filed' on the date it is signed."), cert. denied, 132 S. Ct. 286 (2011).

(continued...)

Petitioner also executed a "Consent to Proceed Before a United States Magistrate Judge."  In accordance with the Court's Order requiring Respondent to file a response, on July 30, 2012, Respondent filed a "Motion to Dismiss Petition for Writ of Habeas; Memorandum of Points and Authorities" ("MTD") and a "Notice of Lodging" contending that the Petition is: (1) unverified; (2) completely unexhausted; and (3) barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Respondent also executed a "Consent to Proceed Before a United States Magistrate Judge."

On August 16, 2012, Petitioner filed a "Motion of Show of Actual Innocence to 'Override' 28 U.S.C. § 2244(d) Statute of Limitations by Way of Expiatory Victim Comp. [sic] Request of Grant to $10,000,000 to $20,000,000 Quest [sic] for Speedy Suite of Rape Crisis and Pain and Distress $75,000,000 - Worth Terms" ("Opposition" or "Opp.").  On August 27, 2012, Petitioner filed a "Motion for Magistrate Judge's Adherence to Actual Innocence Due Diligence Discovery of Irrefutable Evidence."  On August 31, 2012, Petitioner filed a document entitled "Certificial [sic] Document Inclusion of Penalty of Perjury Excerpt to Conclude Victim Comp/Pain and Distress Speedy Suite Grant Request." On October 3, 2012 and October 22, 2012, Petitioner filed documents entitled "Petitioner's Pro 'Se Motion: Letter to Honorable Magistrate Judge to Grant $10/20,000,000 Victim Comp. Deduct of $75,000,000 'Victim Comp.' Expiatory Pursuit Suite of Subpoena [sic] (At Prayer)." On October 23, 2012, Petitioner sent correspondence alleging he is in

_____

[1](...continued)
Where applicable, the Court has afforded Petitioner the constructive filing dates.

1  the prison's Enhanced Outpatient Program and is operating from a point
2  of severe mental illness.

3      On December 3, 2012, the Court issued a Minute Order ordering
4  Respondent to obtain Petitioner's medical records and lodge a copy
5  with the Court in order to more fully develop the record as to
6  Petitioner's equitable tolling claim.   The Court also ordered
7  Respondent to file a Supplemental Brief after the medical records were
8  filed addressing whether additional expansion of the record was
9  necessary, and if it was not necessary, to address Petitioner's claim
10  for equitable tolling.

11      On January 17, 2013, Respondent filed an "Application to Lodge
12  Petitioner's Medical Records ["MR"] under Seal," which was granted by
13  the Court.

14      On March 26, 2013, the Court issued a Minute Order granting the
15  Motion to Dismiss in part with respect to the Petition's lack of
16  verification.   The Court ordered the Clerk of the Court to send
17  Petitioner a copy of the verification page of his Petition for
18  signature and verification.   The Court took the remaining arguments of
19  the Motion to Dismiss—regarding exhaustion and timeliness—under
20  submission.

21      On March 27, and April 1, 8, and 18, 2013, Petitioner filed
22  various letters and documents which the Court construes as further
23  Opposition to the Motion to Dismiss.   The April 8 and 18 filings
24  included the requested signature and verification of the Petition.

25      On April 19, 2013, Respondent filed a Brief on Necessity of
26  Expanding Record and Opposition to Equitable Tolling ("Supp. Brief").

27      On April 25, 2013, Petitioner filed an "Exhibit Correction" with
28  the Court.

1  On May 20, 2013, Petitioner filed his Supplemental Opposition to
2  the Motion to Dismiss ("Supp. Opp.").

3  Having reviewed the allegations in the Petition and the matters
4  set forth in the record, the Motion to Dismiss and Petitioner's
5  various filings in Opposition, it is **ORDERED** that the Motion to
6  Dismiss be granted and the Petition be dismissed.

7

8  **PRIOR PROCEEDINGS**

9  On June 29, 2001, a Los Angeles County Superior Court jury found
10 Petitioner guilty of two counts of rape by force or fear in violation
11 of California Penal Code ("PC") § 261(a)(2) and one count each of
12 first degree burglary in violation of PC § 459 and child endangerment
13 in violation of PC § 273a(a).  The jury also found that Petitioner
14 used a deadly weapon—a meat fork—in violation of PC § 12022.3(a) while
15 committing the rape offenses.  (Lodged Documents Nos. 1 and 2.)  The
16 jury also found true the allegation that the rape offenses were
17 committed during the burglary, but found not true the allegation that
18 the burglary occurred with the intent to commit rape.  (Lodged
19 Document 2.)  On August 7, 2001, the trial court sentenced Petitioner
20 to state prison for a total term of 29 years to life.  (Lodged
21 Documents Nos. 1 and 3.)

22 Petitioner appealed the judgment.  (Lodged Documents Nos. 4-5.)
23 On June 5, 2002, the California Court of Appeal issued an opinion
24 reversing the portion of the judgment imposing a four-year enhancement
25 for use of a deadly weapon on the first count of rape because it
26 should have been stayed, but affirming the judgment in all other
27 respects.  (Lodged Document No. 6.)  The Court of Appeal later
28 recalled the remittitur and reissued an identical opinion with a

4

refiling date of September 23, 2002.  (Lodged Document No. 6.)

Petitioner filed a Petition for Review in the California Supreme Court, which was summarily denied on November 26, 2002. (Lodged Documents Nos. 7 and 8.)

On August 18, 2011,[2] Petitioner filed a document labeled "Motion of Discovery of True (Dom.) (Esp.) Pro Illogics Via Misfortune '+' Exculpatance" in the Los Angeles County Superior Court. (Lodged Document No. 9.)  On August 24, 2011, the court construed the document as a petition for writ of habeas corpus alleging that Petitioner should not have been convicted of rape because there was no evidence of lack of consent.  (Lodged Document No. 10.)   The court denied the petition as: (1) conclusory (with a citation to People v. Karis, 46 Cal. 3d 612, 656, 250 Cal.Rptr. 659 (1988)); (2) untimely because it was filed more than 10 years after Petitioner's conviction and sentence, and Petitioner offered no justification for the delay (with citations to In re Clark, 5 Cal. 4th 750, 783, 21 Cal.Rptr. 2d 509 (1993) and In re Seaton, 34 Cal. 4th 193, 199-200, 17 Cal.Rptr. 3d 633 (2004)); and (3) procedurally defaulted for failing to raise the claims on direct appeal (with citations to In re Dixon, 41 Cal. 2d 756, 759, 264 P. 2d 513 (1953), and In re Waltreus, 62 Cal. 2d 218, 225, 42 Cal.Rptr. 9 (1965)).  (Lodged Document No. 10.)

On August 24, 2011,[3] Petitioner filed a habeas petition in the California Supreme Court, alleging a cursory ground for "innocence by reason of misfortune." (Lodged Document No. 11.)  On  January 4, 2012, the California Supreme Court denied the petition with a citation

---

[2]    Petitioner did not sign or date this document.  The Court therefore utilizes the date it was filed.

[3]    Petitioner signed this petition on August 15, 2011.

5

1   to In re Robbins, 18 Cal. 4th 770, 780, 77 Cal.Rptr. 2d 153 (1998).

2   (Lodged Document No. 12.)

3   The within Petition was constructively filed on April 27, 2012.

4

5   **STATEMENT OF FACTS**[4]

6   "On the evening of January 6, 2001 at approximately

7   11:45 p.m., Christy G. was at her apartment in Lancaster

8   with her two-year-old son.  While on the telephone, she

9   heard a knock at the door.  The person at the door, whom she

10  identified at trial as [Petitioner], said he was looking for

11  her neighbors.  She told him he was at the wrong apartment

12  and shut the door.  Christy recognized this person, although

13  she did not know his name, because he often was seen around

14  her apartment complex and she had casually spoken to him on

15  several  occasions.   Christy  finished  her  telephone

16  conversation, and, about 15 minutes later, opened her pantry

17  door to put something away.  [Petitioner] was standing in

18  the pantry.FN3  Christy screamed, and [Petitioner] knocked

19  her to the floor.  [Petitioner] put his hands on her throat

20  and told her to be silent.  Christy's son came over and hit

21  [Petitioner] on the head, after which [Petitioner] pushed

22  the boy, who fell and began crying.  Christy then struck

23  [Petitioner], causing him to fall to the floor.

24  FN3. Christy was 95 percent sure she locked her

25

26      [4]    In affirming the judgment, the California Court of Appeal
    made  factual  findings  regarding  the  circumstances  underlying
27  Petitioner's  convictions.   Petitioner  has  failed  to  rebut  these
    findings with clear and convincing evidence; therefore, the findings
28  are presumed to be correct.  28 U.S.C. § 2254(e)(1).

1   front door when she shut it after speaking to

2   [Petitioner].  She thought [Petitioner] could

3   have entered her apartment through the sliding

4   glass door that opened to her balcony, which was

5   partially open at the time of the incident.

6

7   Free from [Petitioner], Christy grabbed her son and

8   ran to the front door but was unable to undo the child

9   safety lock and open the door before [Petitioner] came at

10  her. [Petitioner] had taken a meat fork from the butcher

11  block in the kitchen and held it to Christy's neck while he

12  grabbed her around the waist.  [Petitioner] told Christy

13  that if she and her son were not quiet, he would stab them.

14  Christy asked [Petitioner] what he wanted and said she

15  would do whatever he wanted as long as he did not harm her

16  and her son.  [Petitioner] crudely responded he wanted to

17  have sex with her.  Hoping she could escape, Christy asked

18  [Petitioner] to allow her to take her son to her downstairs

19  neighbors' apartment so he would not have to watch.

20  [Petitioner] initially agreed but then changed his mind.

21  [Petitioner] then led Christy into her bedroom, moving the

22  meat fork between her rib cage and her neck, locked the

23  door and left her son in the other room alone.

24      While in the bedroom, [Petitioner] had intercourse

25  with Christy twice.  During the entire time, [Petitioner]

26  held the meat fork against Christy.  After [Petitioner]

27  left the bedroom, Christy dressed, went into the living

28  room, grabbed her son and returned to the bedroom.  When

she thought [Petitioner] had exited the apartment, she walked out of the bedroom and saw [Petitioner] in the pantry, wiping it down with a napkin. [Petitioner] told Christy to return to the bedroom or he would stab and kill her. Christy complied, bringing her son with her. When Christy was confident [Petitioner] had gone, she took her son, ran to the apartment of her downstairs neighbors and called 911.

Christy testified that during the incident she could smell alcohol on [Petitioner], although his speech and ability to walk were normal and he was able to overcome her. Christy's neighbor told the police who responded to the 911 call that [Petitioner] lived in the apartment building, but he did not know in which specific apartment. He directed the police to an apartment where he thought [Petitioner's] friend lived. The police entered and found [Petitioner] asleep on the floor near his own vomit. The meat fork from Christy's apartment was on the floor close to him. The police took [Petitioner] outside, and Christy identified [Petitioner] as the person who had raped her.

The day after the attack, [Petitioner] told an investigating detective that "basically everything [Christy] said is true." He said, however, he went into Christy's apartment to steal money, not to rape her. [Petitioner] also told the detective he had consumed two bottles of wine that evening. After leaving Christy's apartment, he went back to his sister's apartment and fell asleep.

1        [Petitioner] did not testify in his own defense.  His
2    theory, presented by his counsel in closing argument, was
3    that the jury should find him guilty of one count of rape
4    and the child endangerment count.  His counsel argued the
5    People had not proven that two incidences of sexual
6    intercourse occurred so there should be only one rape
7    conviction.   Counsel also maintained the People had not
8    shown [Petitioner] used the meat fork during the commission
9    of the rape offenses, but rather grabbed it to "gain
10   control and protect himself."  Counsel asserted there was
11   not enough evidence to prove that [Petitioner] had
12   committed a burglary or had entered Christy's apartment
13   with the intent to rape her because [Petitioner] was too
14   intoxicated to form the specific intent to commit burglary
15   with the intent to rape."
16   (Lodged Document No. 6 at 3-5.)
17
18                   **PETITIONER'S CONTENTIONS**
19   Petitioner contends the following, inter alia:
20   1.   Petitioner's sentence constitutes cruel and unusual
21        punishment in violation of the Eighth Amendment because
22        there was reasonable doubt of his guilt;
23   2.   Trial counsel was ineffective for "not referring (mandatory)
24        youth guardianship haven assistance to pro decipher the
25        7 year deal restraint and difference upon youth essence
26        incompetence of unknown ill deter of hereditary prime stage
27        brain disease of auditory schizophrenia being new found
28        attended per two week inject treatment annual";

3.   Petitioner's sentence constitutes cruel and unusual punishment because Petitioner was under the influence and reeked of alcohol when he committed the crimes;

4.   Petitioner was deprived of his Fourteenth Amendment right to due process because he did not receive a psychological evaluation; and

5.   Petitioner was deprived of his Fourteenth Amendment right to due process because there was insufficient evidence of intent to commit rape or child endangerment.

(See Petition at 5-6.)


## DISCUSSION

As mentioned, the Court granted Respondent's Motion to Dismiss the Petition as unverified, subject to Petitioner filing his verification with the Court.  Petitioner has provided the requisite verification.  Thus, the remaining grounds for the Motion to Dismiss are Respondent's contentions that the claims are unexhausted and the Petition is untimely.


**A.   All Of Petitioner's Claims Are Unexhausted And The Within Petition Must Be Dismissed.**


**1.   Applicable Law.**

Federal habeas petitioners challenging the legality of custody pursuant to a state court judgment must first exhaust any remedies available in the state courts, unless circumstances exist which make such remedies ineffective.  28 U.S.C. § 2254(b)(1).  This exhaustion requirement is not met if a petitioner has the right, under state law,

to raise the claims presented in any available state procedure.   28 U.S.C. § 2254(c).  A state, through counsel, may waive the exhaustion requirement, but must do so expressly.   28 U.S.C. § 2254(b)(3).

The exhaustion requirement is designed to protect the role of the state courts in the enforcement of federal law and to prevent disruption of state judicial proceedings.  Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198 (1982).  A petitioner has exhausted state remedies if he has fairly presented each and every one of his federal claims to the highest state court with the jurisdiction to consider them.  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887 (1995) (per curiam), citing Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509 (1971); Harmon v. Ryan, 959 F.2d 1457, 1460 (9th Cir. 1992).  A claim has been fairly presented if the petitioner has described both the operative facts and legal theory upon which the claim is based.  Davis v. Silva, 511 F.3d 1005, 1009-10 (9th Cir. 2008); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S. Ct. 2074 (1996).  The petitioner must have alerted the state court that a claim is asserted under the United States Constitution.  Duncan, 513 U.S. at 365.  Further, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347 (2004).

Unless the state expressly waives the exhaustion requirement, a federal court cannot grant relief requested in a state prisoner's habeas petition if the prisoner has not exhausted state remedies with respect to each and every claim contained in the petition.  28 U.S.C. § 2254(b)(1); Reutter v. Crandel, 109 F.3d 575, 578 (9th Cir.), cert.

1   denied, 522 U.S. 851 (1997) (even petitions containing both exhausted

2   and unexhausted claims are subject to dismissal).

3

4          2.   **Analysis**.

5       As noted above, Petitioner raises the following five claims in

6   his Petition: (1) Petitioner's sentence constituted cruel and unusual

7   punishment because there was reasonable doubt as to his guilt;

8   (2) trial counsel was ineffective; (3) Petitioner's sentence

9   constituted cruel and unusual punishment because Petitioner was under

10   the influence and reeked of alcohol when he committed the crimes;

11   (4) Petitioner was deprived of due process because he did not receive

12   a psychological evaluation; and (5) Petitioner was deprived of due

13   process because there was insufficient evidence of intent to commit

14   rape or child endangerment. (See Petition at 5-6.)

15       Counsel for Petitioner filed a Petition for Review in the

16   California Supreme Court alleging that the trial court erred in

17   withholding from the jury that Petitioner was only 16 years old when

18   he committed the crimes (Lodged Document No. 7 at 2, 5-14) and that

19   the trial court erred in imposing a life sentence because, under a

20   "proportionality review," it was cruel and unusual punishment in light

21   of the nature of the offense and offender, and in comparison to the

22   punishments for other serious crimes. (Lodged Document No. 7 at 15-

23   22.) Neither of these claims are raised in the within Petition. The

24   habeas petition filed by Petitioner in the California Supreme Court

25   was almost entirely unintelligible, alleging a cursory ground for

26   "innocence by reason of misfortune," and also possibly a complaint

27   about discovery, without citation to any federal authority. (Lodged

28   Document No. 11.) He  failed to raise any of the claims alleged by

1    the within Petition.

2         Because none of the claims in the Petition were raised in the

3    California  Supreme  Court,  the  within  Petition  is  completely

4    unexhausted and must be dismissed.

5

6    **B.   <u>The Petition Is Untimely</u>**.

7         Since the Petition was filed after the President signed into law

8    the Antiterrorism and Effective Death Penalty Act of 1996 (the

9    "AEDPA") on April 24, 1996, the Court's consideration of the

10   Petition's timeliness is governed by 28 U.S.C. § 2244(d), as amended

11   by the AEDPA.  <u>See Calderon v. United States District Court for the</u>

12   <u>Central District of California (Beeler)</u>, 128 F.3d 1283, 1287 n.3 (9th

13   Cir. 1997), <u>cert. denied</u>, 522 U.S. 1099 & 523 U.S. 1061 (1998).[5]  That

14   section provides:

15        "(1) A 1-year period of limitation shall apply to an

16        application for a writ of habeas corpus by a person in custody

17        pursuant to the judgment of a State court.  The limitation

18        period shall run from the latest of—

19             (A)  the date on which the judgment became final by

20             the conclusion of direct review or the expiration of the

21             time for seeking such review;

22             (B)  the date on which the impediment to filing an

23             application created by State action in violation of the

24             Constitution or laws of the United States is removed, if

25             the applicant was prevented from filing by such State

26

27        [5]   <u>Beeler</u> was overruled on other grounds in <u>Calderon v. United</u>
28   <u>States District Court (Kelly)</u>, 163 F.3d 530, 540 (9th Cir. 1998) (en
     banc), <u>cert. denied</u>, 526 U.S. 1060 (1999).

1     action;

2          (C) the date on which the constitutional right

3     asserted was initially recognized by the Supreme Court,

4     if the right has been newly recognized by the Supreme

5     Court and made retroactively applicable to cases on

6     collateral review; or

7          (D) the date on which the factual predicate of the

8     claim or claims presented could have been discovered

9     through the exercise of due diligence.

10    (2) The time during which a properly filed application

11    for State post-conviction or other collateral review with

12    respect to the pertinent judgment or claim is pending shall not

13    be counted toward any period of limitation under this

14    subsection."

15

16       In most instances, a state prisoner's AEDPA limitations period

17   will be governed by § 2244(d)(1)(A). It is only in "rare instances"

18   that, pursuant to § 2244(d)(1)(B)-(D), the limitation period may run

19   from a date later than the date on which judgment becomes final.

20   <u>Isaac v. Price</u>, No. C 11-3903 JST (PR), 2013 WL 749522, at 1 n.1 (N.D.

21   Cal. Feb. 26, 2013). In the Motion to Dismiss, Respondent contends

22   that the running of the limitations period in this case is governed by

23   § 2244(d)(1)(A). (MTD at 4.)

24

25       **1.**   **Application Of § 2244(d)(1)(A) Renders The Petition**

26           **Facially Untimely**.

27     Under § 2244(d)(1)(A), the statute began to run at the completion

28   of direct review in the state courts. Here, the California Court of

Appeal affirmed the judgment on September 23, 2002. (Lodged Document No. 6.)  Petitioner filed a Petition for Review in the California Supreme Court which was denied on November 26, 2002. (Lodged Document No 8.)  Consequently, the judgment became final ninety days later on February 24, 2003, when Petitioner's time to petition the United States Supreme Court for a writ of certiorari expired.[6]  See <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  Therefore, Petitioner had until February 24, 2004, in which to timely seek federal habeas relief.  28 U.S.C. § 2244(d)(1)(A); <u>see</u> <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001).

Here, Petitioner did not constructively file the within Petition until April 27, 2012, more than eight years after the statute of limitations had already expired.  Absent an alternate start date, statutory or equitable tolling, the within Petition is untimely.

       **2.**    <u>**Petitioner Is Not Entitled To An Alternate Start Date Of The Statute Of Limitations Period**</u>.

       **a.**    <u>**State-Created Impediment**</u>.

In rare instances, AEDPA provides that its one-year limitations period shall run from "the date on which the impediment of filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action." 28 U.S.C. § 2244(d)(1)(B).  Petitioner has failed to set forth sufficient facts

---

      [6]    Per United States Supreme Court Rule 13.1, Petitioner had 90 days from the date of the Order denying the Petition for Review to petition the Supreme Court for a writ of certiorari.

showing that Petitioner is entitled to relief under this provision.

### b.   **Newly Recognized Constitutional Right**.

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the United States Supreme Court.   28 U.S.C. § 2244(d)(1)(C).  Petitioner has failed to set forth sufficient facts showing that Petitioner is entitled to relief under this provision.

### c.   **Discovery of Factual Predicate**.

Under 28 U.S.C. § 2244(d)(1)(D), the statute of limitations begins to run when the "factual predicate" of Petitioner's claims "could have been discovered through the exercise of due diligence." Id.  The term 'factual predicate' refers to the facts underlying the claim, not the legal significance of those facts.  Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) ("This is not to say that [petitioner] needed to understand the legal significance of those facts-rather than simply the facts themselves-before the due diligence (and hence the limitations) clock started ticking.").  Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances.  Schlueter v. Varner, 384 F.3d 69, 74 (3rd Cir. 2004) (quoting Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004)), cert. denied, 544 U.S. 1037 (2005).  Petitioner is challenging his 2001 conviction and sentence, and therefore knew or could have discovered the factual predicate of his claims at that time.  Petitioner has failed to set forth sufficient facts showing

1   that Petitioner is entitled to relief under this provision.

2

3        **C.    Petitioner Is Not Entitled To Statutory Tolling.**

4        The running of the AEDPA's one-year time limitation is tolled for

5   the time period during which a properly filed application for post-

6   conviction or other state collateral review is pending in state court.

7   See 28 U.S.C. § 2244(d)(2); Duncan v. Walker, 533 U.S. 167, 173-74,

8   121 S. Ct. 2120 (2001) (the statutory term "other collateral review"

9   refers to other state collateral review).   The statute is tolled

10  during the time period a state post-conviction petition is considered

11  pending between a lower court's decision on the petition and the

12  filing of a new petition in a higher court.   Carey v. Saffold, 536

13  U.S. 214, 223-25, 122 S. Ct. 2134 (2002).   However, state petitions

14  will only toll the one-year statute of limitations under § 2244(d)(2)

15  if the state court explicitly states that the post-conviction petition

16  was timely or was filed within a reasonable time under state law.

17  Pace v. DiGuglielmo, 544 U.S. 408, 410, 419, 125 S. Ct. 1807 (2005).

18  Claims denied as untimely or determined by federal courts to have been

19  untimely in state court will not satisfy the requirements for

20  statutory tolling.   Id.

21        Here, Petitioner is not entitled to statutory tolling under 28

22  U.S.C. § 2244(d)(2).   Petitioner's two state habeas petitions, which

23  were filed in the Los Angeles County Superior Court and the California

24  Supreme Court respectively in 2011 (Lodged Documents Nos. 10 and 12),

25  have no tolling effect because they were filed well after the period

26  of limitations had already expired.   See Ferguson v. Palmateer, 321

27  F.3d 820, 823 (9th Cir.) ("section 2244(d) does not permit the

28  reinitiation of a limitations period that has ended before the state

petition was filed"), <u>cert. denied</u>, 540 U.S. 924 (2003); <u>Laws v.</u>
<u>Lamarque</u>, 351 F.3d 919, 922 (9th Cir. 2003) (if the first petition is
filed after expiration of the limitations period "statutory tolling
cannot save his claim"); <u>Green v. White</u>, 223 F.3d 1001, 1003 (9th Cir.
2000) (petitioner is not entitled to tolling where the limitations
period has already run).   Thus, Petitioner is not entitled to any
statutory tolling and the Petition is untimely by more than eight
years unless Petitioner is entitled to equitable tolling.

D.   **Petitioner Is Not Entitled To Relief Based On Equitable**
    **Tolling**.

Petitioner alleges that he is entitled to equitable tolling of
the statute of limitations, primarily based on his mental health.
Respondent contends that Petitioner has failed to show that mental
illness rendered him incapable of filing a timely federal petition.
As mentioned, Respondent lodged Petitioner's medical records with the
Court, and has provided a detailed summary of the documents.   (Supp.
Brief at 4-12.)

1.   **Summary of Evidence Before The Court**.

The medical records provided by Petitioner and lodged with the
Court by Respondent encompass over a decade's worth of medical
treatment requested and received by Petitioner.   The records address
severe circumstances, such as Petitioner's thoughts of, and attempts

at, suicide (MR 12, 18, 48, 52, 54, 310, 453; Petition Attachment[7] at 3), and Petitioner's requests to be castrated (MR 67, 321).  The records also comprise mundane requests for "Milk of Magnesia" and Prilosec for Petitioner's apparent recurring stomach problems, sometimes caused by eating spicy prison food.  (MR 10, 56, 61, 297.) They also include documentation of Petitioner's recurrent issues with the blankets he has received in prison which gave him a severe rash and cause itching and burning, among other ailments.  (MR 83, 267.)

The Court has reviewed all of the records provided by the parties.  However, because much of the records are not relevant to whether Petitioner should be entitled to equitable tolling based on his mental health, or do not relate to the periods of time at issue, the Court has focused its summary on the period leading up to and including relevant time Petitioner had to file his federal petition, from February 24, 2003 to February 24, 2004.  The Court will also examine the period leading up to and including the time Petitioner began filing state habeas petitions and the instant Petition.

### a.   Arrival At State Prison And Treatment From February 24, 2003 To February 24, 2004.

Upon arrival at the California Department of Corrections and Rehabilitation ("CDCR"), Petitioner completed a health screening form and answered questions on a reception center physical examination form.  When asked to describe any illnesses, injuries, conditions, or disabilities requiring medical attention, Petitioner simply answered:

---

[7]   Petitioner attaches various documents to the Petition, followed by an "Exhibit A".  For ease of reference, the Court refers to the initial documents by citing the pages consecutively as they are attached to the Petition.

"Psych."   (MR 173.)   Petitioner indicated that he had used PCP, marijuana, and alcohol in excess.   (MR 173.)   He also stated that he attempted suicide in August 2001 while in Juvenile Hall.   (MR 171, 173.)   He indicated that he was treated for mental illness and was taking Paxil.[8]   (MR 171.)   He also answered that he had a current desire to hurt himself or others.   (MR 171.)   The screening nurse indicated that Petitioner did not have any visible signs of physical or mental illness, that his behavior did not suggest a danger to himself or others, and that he did not appear disoriented in "time, place or person."   (MR 171.)

During the relevant period, Petitioner was prescribed the following psychotropic medications:   Ziprasidone (also known as Geodon)[9] during the entire limitation period (MR 29-33, 136, 138, 140-42, 144, 146-48, 150-56, 158, 160, 162); Olanzapine[10] from February 24, 2003 to April 9, 2003 (MR 162, 163, 164); and Remeron (also known as Mirtazapine)[11] from September 15, 2003 through the end of the limitations period (MR 30-31, 136, 138, 140-42, 144, 146-48). Petitioner also received acetaminophen in early 2004 for back problems from "playing ball."   (MR 84, 138.)

---

[8]   Paxil is an antidepressant.   See Barton v. U.S. Dist. Court Cent. Dist. Cal., 410 F.3d 1104, 1106 (9th Cir. 2005).

[9]   Ziprasidone (Geodon) is an antipsychotic mood stabilizer. See Coats v. Kimura, No. 2:09-CV-1830 KJM KJN P, 2013 WL 76288, at *11 (E.D. Cal. Jan. 4, 2013), adopted by, 2013 WL 1325792 (E.D. Cal. Mar. 30, 2013).

[10]   Olanzapine is used to treat depressive episodes associated with bipolar disorder.   See Martin v. Almeida, 2007 WL 2318115, at *3 (E.D. Cal. Aug. 10, 2007), aff'd, 315 F. App'x 642 (9th Cir. 2009).

[11]   Remeron (Mirtazapine) is prescribed to treat depression. See Hernandez v. Astrue, No. 1:10-CV-00176-SMS, 2011 WL 1668053, at *2 n.9 (E.D. Cal. May 3, 2011).

Petitioner signed and executed informed consent forms for Zyprasidone on February 24, 2003 (MR 40) and Remeron on September 15, 2003 (MR 39).

The records also reveal that Petition refused certain medications in March, October, November, and December 2003, and in March 2004. (MR 129, 137, 143, 145, 161.)

On December 23, 2003, Petitioner was seen by prison health care officials for vomiting. (MR 55.) A CDCR "Emergency Care Flow Sheet" indicated Petitioner was spontaneous, oriented, and obeyed commands. (MR 55.) The evaluation also indicated that Petitioner was not medicated at that time. (MR 55.)

### b. Later Worsening Of Mental Health And Recent Condition.

In May 2010, Petitioner began complaining about a "loss of focus" and sleeping problems. (MR 525.) In August and September 2010, Petitioner signed informed refusals of examination and treatment. (MR 617-19.) On October 6, 2010, Petitioner was placed in alternative housing as a "suicide precaution" pending crisis bed admission. (MR 456.) On October 18, 2010, suicide prevention was discontinued and Petitioner was returned to regular housing. (MR 458). On November 2, 2010, Petitioner was admitted to the Correctional Treatment Center for "severe mental health decompensation, increased agitation and worsening of his psychotic behavior." (MR 512.) The evaluating doctor noted that Petitioner had a piece of paper lodged in his ear, which Petitioner stated "helps the voices," and that Petitioner had "acute worsening psychosis." (MR 513.) The report indicated that

Petitioner was "to be considered for Keyhea[12] for grave disability." (MR 513, italics added.)  On November 4, 2010, involuntary medication was administered, and on December 15, 2010, CDCR obtained a Keyhea order.  (Petition Attachment at 3.)  Since that time, Petitioner has been administered psychotropic medication involuntarily pursuant to Keyhea.[13]  (MR 543-61, 623-43, 652, 656.)

On July 20, 2011, Petitioner was presented to the Mental Health Crisis Bed Unit ("MHCBU")[14] for an admission history and physical.  (MR 697.)  His chief complaint was "about something 'radioactive' in his rectum that he wants evaluated."  (MR 697.)  The evaluator indicated that Petitioner was "awake and alert," but had disorganized thoughts.  (MR 697.)  Also, he was "not oriented to time or place . . . [but] not actively hallucinating."  (MR 697.)  The evaluator's assessment was "[s]chizophrenia.  Otherwise, he is an essentially healthy male."  (MR 698.)  On November 1, 2011, Petitioner presented no suicidal ideation, including passive ideation.  (MR 645.)  Petitioner's chronic and acute risk for suicide was assessed at "low."  (MR 645-46.)  On November 4, 2011, a progress note indicated Petitioner did "not have much

---

[12]    In Keyhea v. Rushen, 178 Cal. App. 3d 526, 223 Cal.Rptr. 746 (1986), the state appellate court "upheld a consent decree affirming the right of state prisoners to refuse antipsychotic medications except under certain limited circumstances."  In re Qawi, 32 Cal. 4th 1, 21, 7 Cal.Rptr. 3d 780 (2004).  Under California law, the Keyhea procedures govern the involuntary administration of antipsychotic medications.

[13]    The last Keyhea order appears to have extended treatment to December 7, 2012.  (Petition Attachment at 1.)

[14]    MHCBU is for "'short-term inpatient care for seriously mentally disordered inmate-patients awaiting transfer to a hospital program or being stabilized on medication prior to transfer to a less restrictive level of care.'"  Coleman v. Brown, - F. Supp. 2d -, No. CIV S-90-520 LKK/JFM (PC), 2013 WL 1397335, at *18 (E.D. Cal. Apr. 5, 2013).

complaint," except carpal tunnel and a foot injury from playing handball.  (MR 677.)  On November 19, 2011, Petitioner had his ear checked and he stated "'I'm fine now.'" (MR 675-76.)

### 2.  **Applicable Law**.

The AEDPA's one-year statute of limitations is subject to equitable tolling but only if a petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, - U.S. -, 130 S. Ct. 2549, 2562-63 (2010) (quoting Pace, 544 U.S. at 418); see also Lawrence v. Florida, 549 U.S. 327, 336, 127 S. Ct. 1079 (2007).  Petitioner bears the burden of alleging facts that would give rise to tolling.  Pace, 544 U.S. at 418; Hinton v. Pacific Enterprises, 5 F.3d 391, 395 (9th Cir. 1993); Randle v. Crawford, 604 F.3d 1047, 1057 (9th Cir.) ("Equitable tolling is only appropriate if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.") (quotation marks and citation omitted) (emphasis in original), cert. denied, 131 S. Ct. 474 (2010).

Equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999), and the "threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)), cert. denied, 537 U.S. 1003 (2002); Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); see Beeler, 128 F.3d at 1288 (noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if

'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time.") "[W]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles, 187 F.3d at 1107).

Mental incompetency may constitute an extraordinary circumstance beyond a petitioner's control for purposes of justifying equitable tolling of the AEDPA statute of limitations. Laws, 351 F.3d at 923; Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010); Roberts, 627 F.3d at 772. Where a petitioner's mental incompetence in fact caused his failure to meet the filing deadline, his delay was caused by an extraordinary circumstance beyond his control, and the deadline should be equitably tolled. Laws, 351 F.3d at 923. The Ninth Circuit has held that in order to warrant equitable tolling due to a mental impairment, the following two-part test must be satisfied:

(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either (a) petitioner was unable to rationally or factually personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of circumstances, including reasonably available access to assistance. See Bills, 628 F.3d at 1099-1100; see also Stancle v. Clay, 692 F.3d 948, 958-59 (9th Cir. 2012), cert. denied, 133 S. Ct.

1465 (2013).   The "totality of the circumstances" inquiry in the second prong "considers whether the petitioner's impairment was a but-for cause of any delay." Bills, at 1100; Stancle, at 959.   With respect to diligence, "the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." Id. at 1101.

### 3.  Petitioner Has Not Met His Burden Entitling Him To Equitable Tolling Based On His Mental Health.

There is no question that Petitioner has been treated for mental illness during his period of incarceration.  There is also no question that Petitioner has exhibited suicidal ideation frequently, and attempted suicide, during his stay in prison.  Petitioner has also responded to medication and gone through periods of stability where he had no mental health complaints, and CDCR has discontinued medications periodically or Petitioner has refused them.  (MR 5-6, 9, 21, 195-96, 492, 498).   It is also clear that, at times Petitioner has utilized his mental health, and threatened to hurt himself, to obtain better housing, bigger meal portions, and to "manipulate staff to get his needs or wants met." (MR 57-58; see also MR 49-50, 52, 56, 58, 271, 312.)  Due to the fluid nature of mental health generally, and because there is evidence in the record that Petitioner's mental health fluctuated and that he has at times malingered, retroactively assessing Petitioner's mental health and its effects on his ability to timely file a federal habeas petition is necessarily a challenging task.  See, e.g., Indiana v. Edwards, 554 U.S. 164, 175, 128 S. Ct. 2379 (2008) ("Mental illness itself is not a unitary concept.  It varies in degree.  It can vary over time.  It interferes with an

individual's functioning at different times in different ways.")

At the outset, while Petitioner has suffered from some form of mental illness, it is unclear whether Petitioner had a "severe" mental impairment during the relevant period.  Petitioner in conclusory language alleges he suffered from serious mental illness of "auditory schizophrenia." (See, e.g., Pet. at 5.)  While Petitioner was treated with antidepressant and antipsychotic medications during the relevant period, his medical records do not indicate a diagnosis of schizophrenia at that time.  In fact, summaries of his Unit Health Record as late as November 2010 make no mention of schizophrenia. (See, e.g., MR 512.)  It does not appear that he was assessed with schizophrenia until July 26, 2011, when he experienced a period of decline, over seven years after the statute of limitations expired on February 24, 2004.  (MR 698.)

Further, in February and September 2003, Petitioner signed informed consent forms indicating he understood his condition and consented to taking Geodon and Remeron.  (MR 39-40.)  His treating physician also opined at those times that Petitioner had the capacity to understand his illness, understand that medication could help, and understand that there were possible side effects.  (MR 39-40.)  The fact that Petitioner had the capacity to meet with doctors and discuss his options regarding his treatment, understand and weigh the options, consent to medication, and request a variety of other medical services for his stomach, feet, ear, carpal tunnel, and rash, belies his claim of severe mental incapacitation.  See O'Connell v. Yates, No. ED CV 11-982-RGK (OP), 2012 WL 7762176, at *7-8 (C.D. Cal. Dec. 31, 2012) (equitable tolling not warranted where inmate demonstrated his understanding of his rights by refusing to see a particular doctor,

making repeated requests for medication refills and adjustments, and routinely seeking other health services), adopted by, 2013 WL 1124757 (C.D. Cal. Mar. 18, 2013); Norman v. Dovey, No. CIV S-06-2235 MCE DAD P, 2010 WL 1416784, at *5 n.1 (E.D. Cal. Apr. 8, 2010) (inmate's execution of two informed consent forms for antidepressant medication undermined claim that his mental health condition was an "extraordinary circumstance" warranting equitable tolling), aff'd, 486 F. App'x 651 (9th Cir. 2012). Moreover, the fact that Petitioner was treated for his mental illness during the bulk of the limitations period weighs in favor of him being able to function at the time. See, e.g., Nash v. Fakhoury, No. ED CV 09-1595-SVW (DTB), 2010 WL 3834987, at *6 (C.D. Cal. July 6, 2010), adopted by, 2010 WL 3834977 (C.D. Cal. Sept. 21, 2010). Thus, Petitioner has not shown that he suffered from a mental impairment during the relevant period that was of such severity that he was unable to rationally or factually understand the need to timely file or that he was unable to personally prepare a habeas petition and effectuate its filing. See Bills, 628 F.3d at 1099-1100; Bondurant v. Gonzalez, No. 10-CV-1945-AJB (JMA), 2011 WL 3475302, at *8 (S.D. Cal. Mar. 29, 2011) (while mention of a diagnosis of schizophrenia certainly does raise questions about an inmate's mental well being, such mental problems were not of such severity to meet the first prong of Bills), adopted by, 2011 WL 3475289 (S.D. Cal. Aug. 5, 2011).

However, even if Petitioner's condition had risen to a level of a severe mental impairment during the relevant period, Petitioner has not shown it was the "but for" cause of his delayed filing of this federal habeas petition and that he was diligent. Bills, 628 F.3d at 1100. Equitable tolling cannot be granted merely because the

petitioner "has an illness" or is suicidal; rather, the mental illness must prevent a prisoner from filing a timely petition.  Id.; Stancle, 692 F.3d at 959; see also, Boyde v. Brown, 404 F.3d 1159, 1166-67 (9th Cir. 2005) (noting that people with mental deficiencies are not necessarily incompetent); Atkins v. Virginia, 536 U.S. 304, 318 (2002) (noting that mentally disabled defendants "frequently know the difference between right and wrong and are competent").  Petitioner has failed to show why he was unable to file any state habeas petitions between February 24, 2003 and February 24, 2004, when the period of limitation was pending, or in any of the six years that followed.  As such, he has made no showing that he has been diligently pursuing his claims and the mental illness prevented him from doing so.  See Laws, 351 F.3d at 922-34 (petitioner must show causal connection between mental illness and failure to file timely petition).

Moreover, the fact that Petitioner filed two state habeas petitions in 2011 (Lodged Documents Nos. 9 and 11) during the period of time his condition worsened, belies any claim that mental illness prevented him from filing a timely petition earlier, when his condition was much better.  See Roberts, 627 F.3d at 773 (affirming district court's rejection of equitable tolling argument based on mental incompetency because inmate managed to file several petitions for post-conviction relief in state court); Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) (rejecting equitable tolling argument because inmate was able to file motion in federal court and successful discovery motion in state supreme court); Lopez v. Selker, 536 F. Supp. 2d 1154, 1159-60 (C.D. Cal. 2008) (citing Gaston v. Palmer, 447 F.3d 1030, 1034-35 (9th Cir. 2005) (suggesting that a petitioner who

is physically and mentally able to file a petition in one court would be deemed just as capable of filing a petition in federal court), amended on other grounds by Gaston v. Palmer, 447 F.3d 1165 (9th Cir. 2006).

Petitioner has therefore failed to meet the second prong of Bills by establishing that a mental illness was the "but for" cause of the delay and that he was diligent.  Bills, 628 F.3d at 1099-1100.  Thus, Petitioner is not entitled to equitable tolling based on his mental health.

### 4. **Petitioner Has Not Met His Burden Entitling Him To Equitable Tolling On Any Other Ground**.

Petitioner also blames his untimely filing on his slow learning, and lack of a "general education degree, diploma, degree, or Ph. D." (Supp. Opp. at 3-5.)  He states that he knows very little about the law, and is a self-proclaimed "legal idiot" and layman. (Opp. at 2; Supp. Opp. at 4.)  However, a petitioner's "confusion or ignorance of the law," no matter what its origin, has not been held to provide an excuse for failing to timely file a habeas petition.  Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009), cert. denied, 131 S. Ct. 77 (2010); Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

Finally, Petitioner appears to fault his jailhouse lawyer. (See "Motional Letter: For Reasonable Cause of Error" at 3, attached to 4/18/13 filing; Supp. Opp. at 2.)  A petitioner's pro se status or lack of legal assistance while preparing a petition does not justify a failure to timely file the petition because there is no legal right to counsel in collateral proceedings.  See Pennsylvania v. Finley, 481

U.S. 551, 555, 107 S. Ct. 1990 (1987); see also, Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (inmate alleged that his pro se status, missing books and reporters in the law library, and his reliance on jailhouse assistants who were either too busy or transferred, justified the delay in filing his habeas petition; however, these circumstances are hardly extraordinary given the vicissitudes of prison life and there was no indication in the record that they made it impossible for him to file on time); United States v. Cicero, 214 F.3d 199, 204-05 (D.C. Cir. 2000) (no equitable tolling for actions of a jailhouse lawyer which result in the filing of an untimely petition); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on alleged incompetence of jailhouse lawyer was not sufficient to justify cause to excuse procedural default).

Petitioner has not shown that extraordinary circumstances exist warranting equitable tolling. Accordingly, the within Petition is untimely.


**E.   Petitioner's Actual Innocence Claim Does Not Allow Petitioner To Escape The Limitations Period.**

Petitioner contends in various documents that actual innocence renders the within Petition timely. Petitioner points out that at the time of the crime he was a child. (Opp. at 1-3; 8/27/12 filing at 1; 10/3/12 filing at 3.) Petitioner claims that, due to his young age and mere "teen strength," combined with his level of intoxication, he would not have been able to enter and exit the balcony on the two-story apartment building. (Opp. at 1-2.) He claims blue prints for the apartment, and his various drawings of the apartment layout, support his actual innocence claim. (Opp. at 1; Petition Exhibit A;

1 | 8/23/12 Motion for Court Order to Release Blueprints.)

2 | "[A]ctual innocence, if proved, serves as a gateway through which
3 | a petitioner may pass . . . the impediment [of] . . . expiration of
4 | the statute of limitations." McQuiggin v. Perkins, - U.S. -, 133 S.
5 | Ct. 1924, 1928 (2013); see also Lee v. Lampert, 653 F.3d 929, 932,
6 | 934-35 (9th Cir. 2011) (en banc). "[T]enable actual-innocence gateway
7 | pleas are rare: '[A] petitioner does not meet the threshold
8 | requirement unless he persuades the district court that, in light of
9 | the new evidence, no juror acting reasonably, would have voted to find
10 | him guilty beyond a reasonable doubt." McQuiggin, 133 S. Ct. at 1928
11 | (quoting Schlup v. Delo, 513 U.S. 298, 329, 115 S. Ct. 851 (1995).
12 | "This exacting standard permits review only in the extraordinary case,
13 | but it does not require absolute certainty about the petitioner's
14 | guilt or innocence." Lee, 653 F.3d at 938 (quotations and citations
15 | omitted). "Unexplained delay in presenting new evidence bears on the
16 | determination whether the petitioner has made the requisite showing."
17 | McQuiggin, 133 S. Ct. at 1935.

18 | Here, Petitioner has failed to present new reliable evidence that
19 | shows no reasonable juror would have found him guilty. Petitioner's
20 | argument that he could not have committed the crime because Christy's
21 | balcony was two stories high, and he could not have got back into the
22 | apartment considering his age and inebriation, simply does not
23 | overcome Christy's account of discovering Petitioner in her apartment
24 | and him raping her, and Petitioner later being found in possession of
25 | the meat fork from her apartment. Further, his claim of actual
26 | innocence is not credible considering Petitioner told investigating
27 | officers that "'basically everything [Christy] said is true'" (Lodged
28 | Document No. 6 at 4); counsel told the jury they should find him

guilty of one count of rape and the child endangerment count (Lodge Document No. 6 at 5); and Petitioner made admissions to medical staff tending to show culpability for the offense (<u>see, e.g.</u>, MR 67 (requesting castration because he was "in for rape and I fuked [sic] up"), 321).  In the absence of any evidence that makes it more likely than not that no reasonable juror would have convicted Petitioner, <u>see</u> <u>McQuiggin</u>, 133 S. Ct. at 1928, <u>Schlup</u>, 513 U.S. at 324; <u>House v. Bell</u>, 547 U.S. 518 (2006), Petitioner's claim of a miscarriage of justice fails and therefore cannot be used to excuse his untimeliness. Because the Petition clearly is untimely under 28 U.S.C. § 2244(d)(1),

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

dismissal with prejudice is appropriate.

**ACCORDINGLY, IT IS ORDERED** that the Petition be dismissed with prejudice and the Court declines to issue a Certificate of Appealability.[15]


DATED: __June 28, 2013__              _____VICTOR B. KENTON_____
                                      VICTOR B. KENTON
                                      UNITED STATES MAGISTRATE JUDGE

---

[15]     Under 28 U.S.C. §2253(c)(2), a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Here, the Court has found that the Petition is time-barred.  Thus, the Court's determination of whether a Certificate of Appealability should issue here is governed by the Supreme Court's decision in Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595 (2000), where the Supreme Court held that, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. at 484.  As the Supreme Court further explained:
        "Section 2253 mandates that both showings be made before the
        court of appeals may entertain the appeal.  Each component
        of the § 2253(c) showing is part of a threshold inquiry, and
        a court may find that it can dispose of the application in
        a fair and prompt manner if it proceeds first to resolve the
        issue whose answer is more apparent from the record and
        arguments." Id. at 485.
        Here, the Court finds that Petitioner has failed to make the requisite showing that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."